UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARVIN LIDDELL LOTT,               )
                                   )
            Petitioner,            )
                                   )
    vs.                            )          Case No. 4:05CV1386CEJ/MLM
                                   )
DAVE DORMIRE,                      )
                                   )
            Respondent.            )

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court pursuant to the Petition for Writ of Habeas Corpus filed by

Petitioner Marvin Liddell Lott ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed

a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted and an

Amended Response to Order to Show Cause.[1] Doc. 4, Doc. 7. Petitioner filed a Motion for Leave

to Order Immediate Habeas Relief, a pleading in which he asks this court to rule in his favor in regard

to all stated grounds for relief, a Motion to Strike Respondent's Response to Order to Show Cause,

a Motion requesting release as soon as Respondent can process the court's order, and a document

titled "Declare Judgment by for reasons of default." [2] Doc. 8, Doc. 9, Doc. 10, Doc. 11, Doc. 12.

---

[1]        Although Respondent did not seek leave to file his Amended Response to Order to
Show Cause in which he addressed Grounds 7 and 8 of Petitioner's § 2254 Petition, the court
grants leave to file in order that all of the grounds raised by Petitioner may be properly considered
by the court.

[2]        By Order dated November 2, 2005, the court ordered that if Petitioner chooses to
file a Traverse that he do so within ninety days from the date of the court's Order. Rather than
file a Traverse, Petitioner filed the above described motions. In the document received by the
court on November 15, 2005, Petitioner stated that because Respondent allegedly is in default of
the court's Case Management Order judgment should be granted in Petitioner's favor. Petitioner
further stated that " I finalize and rest my entire case now on this issue." Doc. 12. As such, it is
clear that Petitioner does not intend to file a Traverse.

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 2.

## II.
## BACKGROUND

On October 2, 2000, Petitioner was charged by Amended Information as follows: Count I, the class A felony of assault in the first degree in that on March 28, 2000, Petitioner knowingly caused serious physical injury to Geraldine Buckley by shooting her; Count II, the felony of armed criminal action in that on or about March 28, 2000, Petitioner committed the felony of assault in the first degree as described in Count I by, with, and through the use, assistance and aid of a deadly weapon; Count III, the class B felony of an attempt to commit robbery in the first degree in that on or about March 28, 2000, Petitioner entered TNT Video in Sikeston, Missouri, pointed a handgun at Geraldine Buckley, the sales clerk, demanded that she put the cash from the cash register into a white bag, shot her while she was filling the bag with cash, and then ran out of the store, and that such conduct was a substantial step toward the commission of the crime of robbery in the first degree of TNT Video and was done for the purpose of committing such robbery. In each count Petitioner was charged as a prior offender. Resp. Ex. C at 8-10.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:

On March 28, 2000, Geraldine Buckley was working the afternoon shift as a clerk at T & T Video located on Main Street in Sikeston, Missouri. Buckley worked at T & T Video for five years and had known Movant for that long because he used to come into the video store and not only rent movies, but also play pool. Buckley believed she had seen Movant more than twenty-five times. Movant came into T & T Video twice the afternoon of March 28. The first time occurred between 7:00-7:30 p.m. where he scanned through the new releases by reading the back covers and then left without renting a movie. The second time occurred under not such normal circumstances. Movant came in around 8:00-8:30 p.m. with a white plastic bag over his head. Buckley could only see from the neck up because a long video rack obstructed her view from the rest of his body. He ran up to the clerk's counter, pointed a gun at Buckley, and demanded money. Buckley described the man as being heavy and taller than her.

2

When the man approached Buckley, he laid a bag on the counter for her to place the cash register money inside. In the midst of the chaos, however, he misplaced the bag and could not see clearly enough through the bag on his own head to find the money bag. To remedy his situation, he raised the bag up to the bridge of his nose giving his eyes a clear view and also giving Buckley a clear view of this masked man. Instantly recognizing him, Buckley shouted, "Marvin--Marvin, why you doing this to me. I've never done anything to you. Why do you want to do this to me[?]" Movant responded, "Bitch," shot her, and left just as the telephone rang.

Buckley answered the telephone and told the caller she had been shot and robbed. She then telephoned 911 and told the operator she had been robbed and Movant shot her. Buckley also identified Movant to Officer Williamson, a patrol officer, when he arrived at the video store shortly after the incident. Then again, when Buckley was taken to the hospital, she told Detective Blakley Movant was the man who shot and robbed her. Police, then, showed her a photo line-up and she identified Photo No. 3, which was the photo of Movant. At trial, Buckley again identified Movant as the man who shot her in T & T Video.

After Buckley placed the call to 911, police began searching the neighborhood for Movant and eventually found him at his home with his wife and children. Movant eventually came out of his house and the police escorted him to the police station. Detective Lawson searched Movant's car and found ten plastic bags, a pair of rubber gloves, and a partially used box of the same type of gloves. Later, police returned to Movant's house with a search warrant where Movant's wife led them to the bathroom. She showed them, in a ventilation shaft, a .45 caliber gun wrapped in a towel. Police found a paper box next to the gun containing seven .45 bullets. Walter Dandridge, a firearms and toolmark examiner for the Bureau of Alcohol, Tobacco and Firearms, conclusively determined that the shell recovered from the crime scene, near Buckley, was fired from the .45 caliber pistol found in Movant's bathroom ventilation shaft.

Lott v. State, 147 S.W.3d 842, 843-44 (Mo. Ct. App. 2004).

Petitioner waived his right to a jury trial.[3] Resp. Ex. C at 27. Petitioner did not testify at his trial. The trial court found Petitioner guilty of one count of first degree assault, one count of armed criminal action, and one count of first degree attempted robbery and sentenced Petitioner to concurrent terms of twenty years, twenty years, and fifteen years, respectively. Resp. Ex. C at 35-36.

---

[3] The Missouri appellate court stated that Petitioner pleaded guilty in exchange for the State's agreeing to ask for no more than concurrent terms of twenty, twenty, and fifteen years imprisonment in the event the trial court found Petitioner guilty. Resp. Ex. K at 4.

Petitioner filed a direct appeal in which he raised the following issue: the trial court erred in not excluding Buckley's pre-trial and in-court identifications of him. Resp. Ex. D. By Order dated August 9, 2001, the Missouri appellate court affirmed the judgment of the trial court. Resp. Ex. F.

Petitioner filed a pro-se post-conviction relief motion. Resp. Ex. H at 3-17. Counsel was appointed and a First Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing was filed. Resp. Ex. H at 19-29. After Petitioner's State post-conviction relief motion was denied by the motion court he filed an appeal with the Missouri appellate court in which he raised the following issues: trial counsel was ineffective for advising Petitioner to waive his right to testify and for failing to call Petitioner's wife as an alibi witness. Resp. Ex. I. On October 25, 2004, the Missouri appellate court affirmed the motion court's denial of Petitioner's post-conviction relief motion. Resp. Ex. K.

In his § 2254 Petition filed on August 29, 2005, Petitioner raised the following issues:

1.    Petitioner was improperly convicted pursuant to unreliable identification made by the victim in an unreliable line up.

2.    There was no probable cause to search the Demaster Street house or Petitioner's vehicle.

3.    Petitioner received ineffective assistance of counsel for numerous reasons including because Petitioner's counsel told him to waive his right to testify and as a result Petitioner was denied his constitutional right to testify and because counsel failed to call Petitioner's wife as an alibi witness.[4]

4.    The evidence was insufficient to convict Petitioner of second degree assault as opposed to first degree assault.

_____

[4]    Petitioner's § 2254 incorporates the numerous allegations of ineffective assistance of counsel alleged in his pro-se State post-conviction relief motion. See Doc. H at 9. Other than Ground 3, as set forth above, Petitioner did not raise issues of ineffective assistance of trial counsel in the appeal of his State post-conviction relief motion. The court, therefore need not articulate these additional allegations of ineffective assistance of counsel because the only allegations of ineffective assistance of counsel which Petitioner has not procedurally defaulted, as set forth below, are the allegations of Ground 3.

5.         Petitioner was never charged with first degree assault in the amended information.

6.         Petitioner's right against double jeopardy was violated because he was charged with both armed criminal action and attempted armed robbery.

7.         The integrity of the crime scene was not preserved and there was tampering of the evidence.

8.         The trial court erred in denying Petitioner's Motion for Judgment of Acquittal at the conclusion of the State's presentation of evidence and at the conclusion of the presentation of all evidence.

Doc. 1.

## II.
## LEGAL FRAMEWORK APPLICABLE TO DEFAULT, EXHAUSTION AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails to follow applicable state procedural rules for raising the claims "is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). See also Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994) ("[B]efore a petitioner can bring a federal habeas action, he must have presented the same legal theories and factual bases to the state courts." (citing Anderson v. Harless, 459 U.S. 4, 6 (1982); Kenley v. Armontrout, 937 F.2d 1298, 1301 (8th Cir. 1991)). "[F]airly present" means that state prisoners are "required to 'refer to

a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" <u>Abdullah,</u> 75 F.3d at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>Id.</u> at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. <u>See</u> <u>Dretke v. Haley</u>, 541 U.S. 386, 388-89 (2004). <u>See also</u> <u>Coleman</u>, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile state remedies,' through which the petitioner can present his claim." <u>Id.</u> (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." <u>Clark v. Caspari</u>, 274 F.3d 507, 510 (8th Cir. 2001) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)). In <u>Randolph v. Kemna</u>, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court."

In <u>Duncan v. Walker</u>, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity

fully to consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 518-519 (1982)). The Court further stated in Duncan that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950), overruled on other grounds, Fay v. Noia, 372 U.S. 391 (1963)). As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."

The court further notes that a habeas petitioner has the burden to show that all available state remedies are exhausted or that exceptional circumstances exist with respect to every claim in his petition. Darr, 339 U.S. at 218-19; Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998).

Section 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Respondent correctly argues that Petitioner has procedurally defaulted Grounds 2 and 4-8 because he failed to raise these claims in his direct appeal or in the appeal of his post-conviction relief motion. Petitioner has failed to suggest why his procedural default should be excused. As such, the court finds that Petitioner has procedurally defaulted Grounds 2 and 4-8; that he has failed to establish grounds for excusing his procedural default; and that, therefore, Grounds 2 and 4-8 should be dismissed. The court also finds that Petitioner's § 2254 Petition is timely.

# III.
# STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"),

applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of

April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the

requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The

Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant

a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the

merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue

only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established
> Federal Law, as determined by the Supreme Court of the United
> States." Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court decides
> a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the
> correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes

that the relevant state-court decision erroneously or incorrectly applied clearly established federal law.

Id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v.

Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers

v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are  materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent."  529 U.S. at 406.  <u>See also</u>  <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003).  It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law.  <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. <u>Williams</u>, 529 U.S. at 413. <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001).  Upon explaining § 2254's legal standard, the Supreme Court held in <u>Penry</u> that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." <u>Id.</u> at 793 (citing <u>Williams</u>, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." <u>Atley v. Ault</u>, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." <u>Boyd v. Minnesota</u>, 274 F.3d  497, 500

(8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of th evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n. 4 (8th Cir.2001)."), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

## IV.
## DISCUSSION

**Ground 1 - Petitioner was improperly convicted pursuant to unreliable identification of Petitioner by the victim in an unreliable line up**:

In support of Ground 1 Petitioner argues that Ms. Buckley's identification of him was unreliable and her credibility cannot be trusted because she saw only "below the bridge of the robber[']s face and because she was not paying attention to "anything but the gun." Petitioner further argues that he was the only person in the line-up whom Ms. Buckley knew and that, therefore, her identification of Petitioner was not reliable. Petitioner also states that Ms. Buckley's injuries were not serious and there was no reason the State could not have waited to have her identify him until after she was medicated. Doc. 1 at 6-10.

Upon considering the issue of Petitioner's Ground 1, the Missouri appellate court noted that after she was taken to the hospital, Ms. Buckley told Detective Blakley that Defendant shot her and that Detective Blakley "asked her if she could point the gentleman out in a lineup and she said that she could." Resp. Ex. F at 3. The court further noted that the photographic line up shown to Ms. Buckley was comprised of six pictures; that the instruction sheet which accompanied it "warned that the person that Ms. Buckley saw might not be in one of the pictures"; that Ms. Buckley pointed to Petitioner's picture in front of detectives and identified him as the person who shot her; and that Ms. Buckley also identified Petitioner at trial. Id. The Missouri appellate court further held as follows:

> In his sole point on appeal, Defendant argues that the trial court erred in not excluding Buckley's pre-trial and in-court identifications of him. He contends that the in-court identification was tainted by an impermissibly suggestive lineup procedure because Defendant's photograph in the lineup was much darker than the other photographs, and Buckley expected to see Defendant's photograph before she was shown the lineup.
>
> To exclude identification testimony, the defendant must show: (1) the pre-trial identification procedure was impermissibly suggestive; and (2) the suggestive procedure made the identification at trial unreliable. State v. Vinson, 800 S.W.2d 444, 446 (Mo. banc 1990). Identification testimony will only be excluded when the pretrial identification procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification. State v. Hornbuckle, 769 S.W.2d 89, 93 (Mo. banc 1989).

In identification procedures, "[t]he linchpin of due process" is reliability. State v. Middleton, 995 S.W.2d 443, 453 (Mo. banc 1999), ... . Reliability is assessed under the totality of the circumstances. Hornbuckle, 769 S.W.2d at 93. The factors to be considered include: (1) the opportunity of the witness to view the subject at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description of the criminal given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the length of time between the crime and the identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977); Middleton, 995 S.W.2d at 453.

In the instant case, Defendant claims that Detective Blakley impermissibly suggested that Buckley look for Defendant in the lineup. Defendant contends this because, upon being told by Buckley that Defendant was the one who shot her, Detective Blakley stated, 'If I had a photo lineup would you be able to pick the gentlemen [sic] out of there?'

The cornerstone of an analysis for "impermissibly suggestive" photo identification procedures is whether the witness' identification is the result of "improper comment or activity on the part of the officer showing the photograph." State v. Cooper, 811 S.W.2d 786, 789 (Mo. App. W.D.1991). Here, the question posed by Detective Blakley did not suggest that Buckley look for Defendant. The evidence shows that Buckley independently came to the conclusion that Defendant was the one who shot her. She came to this conclusion before talking to Detective Blakley. She told the 911 operator and the police at the video store that Defendant shot her. Detective Blakley said or did nothing improper. Furthermore, even if Buckley was expecting to see Defendant in the line up, "it has been held that when an individual is shown a photographic array it is implicit that within those photographs is a person suspected by the authorities to be the perpetrator of the crime." State v. Solomon, 7 S.W.3d 421, 425 (Mo. App. S.D. 1999). Such an implicit message is not impermissibly suggestive. State v. Jones, 917 S.W.2d 622, 624 (Mo. App. E.D. 1996).

Defendant also contends that the photo line up itself was impermissibly suggestive because Defendant's photograph was darker than any of the other photographs. Mere differences in size, color, background, or type of photographs, however, do not render a photographic display impermissibly suggestive. State v. Anthony, 857 S.W.2d 861, 867 (Mo. App. W.D. 1993). Thus, the absence of suggestive comments or activities by the police, Defendant's slightly darker photograph did not impermissibly suggest that he was Buckley's assailant.

Defendant has failed to demonstrate that the pre-trial identification procedure was impermissibly suggestive; therefore, we need not evaluate the reliability of the in-court identification. See Vinson, 800 S.W.2d at 446; Solomon, 7 S.W.3d at 425. However, even assuming the pre-trial identification procedure was impermissibly suggestive, we would still find the admission of the in court identification testimony

proper, as it was reliable. Buckley was able to view Defendant at the time of the crime because Defendant pulled the bag partially off his head in order to find the money bag. It was at this time Buckley recognized Defendant. Second, even though she primarily focused on the gun, Buckley had a sufficient degree of attention to recognize Defendant when he raised the bag partially away from his head. Third, Buckley was able to describe her shooter as a man with a heavy build and average height, a description that fit Defendant. Buckley also named Defendant as the shooter at least three times before talking to Detective Blakley. Fourth, Buckley was extremely certain when it came to the photo lineup. She immediately was able to point out picture number three, Defendant, when she was shown the lineup. Fifth, the time between the shooting and Buckley's identification of Defendant in the photo lineup was very short. The shooting happened around 8:00 p.m., and the lineup was compiled at 9:17 p.m. Shortly thereafter, Detective Lawson took the photo lineup to the hospital, where Buckley identified Defendant.

The trial court did not err in permitting evidence of the in-court and out-of-court identifications. Sufficient evidence exists in the record to show that the identification procedure used by authorities was not impermissibly suggestive and that the identification was reliable. Therefore, Defendant's point must fail.

Resp. Ex. F at 3-6.

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 1.

First, the Missouri appellate court relied on the United States Supreme Court's decision in Manson,

432 U.S. at 114, for determining whether line up procedures comported with due process. The court

further relied on Middleton, 995 S.W.2d at 453, in which case the court set forth a standard which

is identical to that set forth in Manson, 432 U.S. at 114. In regard to the constitutional standard

applicable to a photographic line up the Eighth Circuit held in United States v. Gipson, 383 F.3d 689,

698 (8th Cir. 2004), that:

The constitutional standard requires us to consider, first, whether the pretrial identification procedures used were impermissibly suggestive and, second, if they were impermissibly suggestive, whether they created a very substantial likelihood of irreparable misidentification under the totality of the circumstances. [United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995).

The court in Gipson further noted that photograph line ups were not suspect where the line

ups were not improperly suggestive and "where, among other things, the photographs in the [ ]

line-ups were all of men of the same race and similar features, and there was no evidence of any prompting or suggestion from the officer on any occasion." Id. (citing Johnson, 56 F.3d at 953-54). See also Salam v. Lockhart, 874 F.2d 525, 529 (8th Cir. 1989) ("[I]dentification procedures were not impermissibly suggestive. The individuals in the photographic display and lineup were of the same race, possessed similar physical features, and were alike in size, age, and dress."). The court further held that, "[e]ven if we were to hold that the pretrial identification procedures used were impermissibly suggestive, there was not a substantial likelihood of irreparable misidentification under the totality of the circumstances." Id. at 698. Line ups are not impermissibly suggestive, however, where "identification is made in circumstances allowing care and reflection." Manson, 432 U.S. at 116.

The court notes that in the matter under consideration, prior to identifying Petitioner in a photographic line up Ms. Buckley had the opportunity to closely observe the person who shot her and attempted to rob the store as he raised the bag which had previously been covering his face up to the bridge of his nose; Ms. Buckley identified Petitioner to the patrol officer who arrived on the scene; and Ms. Buckley told an officer when she was taken to the hospital that Petitioner was the person who shot her in the video store. Upon determining that the photographic line up in which Ms. Buckley identified Petitioner was not unconstitutional the State appellate court first considered that the line up was not impermissibly suggestive and that Buckley's identification of Petitioner was reliable. Specifically, the State court relied on the constitutional standard articulated by the Supreme Court in Manson, 432 U.S. at 114. As such, the decision of the State court in regard to the issue of Petitioner's Ground 1 is a not contrary to federal law and is a reasonable application of federal law. See id.; Gipson, 383 F.3d at 698; Salam, 874 F.2d at 529. Additionally, the State court reasonably

applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's

Ground 1 is without merit and that it should be dismissed.

**Ground 3 - Petitioner received ineffective assistance of counsel because counsel told him to waive his right to testify and because counsel failed to call Petitioner's wife as an alibi witness:**

Upon addressing the issues raised in Petitioner Ground 3 the Missouri appellate court held

as follows:

> Although the right to testify is a fundamental constitutional right, it may be voluntarily and knowingly waived by the criminal defendant. Morrison v. State, 75 S.W.3d 893, 896-897 (Mo. App. S.D.2002). Counsel may advise defendant not to testify and this will be considered sound trial strategy as opposed to ineffective assistance of counsel. Id.

> Movant claims had he been allowed to testify, he would have told the court he was at home during the time of the robbery. Movant challenged at trial the victim's identification of him in the commission of the crime; his strategy was he was misidentified by the video store clerk and he was not there at the time of the robbery. His now-claimed alibi adds little to that defense. Likewise, Movant's claim that his wife would have testified he was at home with her and their children between 7:30 and 8:00 p.m., at the time of the robbery, does little to enhance his defense or show any prejudice to him. The victim testified Movant first entered the store between 7:00 and 7:30 p.m. Movant's wife would supposedly testify Movant was home between 7:30 and 8:00 p.m. The robbery occurred at some time 'around 8:00 p.m.' Wife's purported testimony does not contradict any fact in evidence. We also note that defense counsel filed a motion in limine to keep out any statements by Movant's wife that "might be incriminating." We can surmise that had she taken the stand, other evidence damaging to Movant would have been introduced.

> The overwhelming amount of evidence clearly implicates Movant in the robbery and shooting. Buckley, having known Movant for some time, identified Movant at the time of the crime. In her conversations to the 911 operator, to police officers when the arrived on the scene, to Detective Blakley at the hospital, in the subsequent photo lineup and then again at trial, the victim identified Movant as the shooter. Apart from the eyewitness's multiple identifications, the .45 caliber gun found hidden in Movant's house was proven to be the same weapon used in the commission of the crime. Movant, therefore, has not made a sufficient showing of prejudice form counsel's alleged ineffectiveness even if counsel did advise Movant not to testify or failed to call an alibi witness.

Resp. Ex. K at 5-6.

Pursuant to Williams, the court will consider federal law applicable to the issues raised in Petitioner's Ground 3. Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of

counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted).  ...

       Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  (citation omitted). There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. Strickland, 466 U.S. at 688-89.  Counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991).  The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally  left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted).  Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded."  Id. The decision whether to call witnesses, cross examine witnesses, or introduce evidence may be a matter of trial strategy.  Hall v. Lubbers,  296 F.3d 685, 694 (8th Cir. 2002);  Battle v. Delo, 19 F. F.3d 1547, 1556 (8th Cir. 1994).  "Strategic decisions 'made after thorough investigation of law and

facts ... are virtually unchallengeable,' even if that decision later proves unwise." <u>Strickland,</u> 466 U.S. at 590.

In regard to counsel's advising a defendant not to testify the Eighth Circuit held in <u>Frey v. Schuetzle,</u> 151 F.3d 893, 897-98 (8th Cir.1998), as follows:

> A criminal defendant has a constitutional right to testify in his or her own defense. <u>Rock v. Arkansas,</u> 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); <u>United States v. Bernloehr,</u> 833 F.2d 749, 751 (8th Cir.1987). This right is derived from the Fourteenth Amendment's due process clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's prohibition on compelled testimony. <u>Rock,</u> 483 U.S. at 51-53, 107 S.Ct. 2704. "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right." <u>Bernloehr,</u> 833 F.2d at 751. A defendant's waiver of this right must be made knowingly and voluntarily. <u>Id</u>. We have previously held that a knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify. <u>Id</u>. at 751- 52. We stressed that under such circumstances the defendant must act "affirmatively" rather than apparently "acquiesc[ing] in his counsel's advice that he not testify, and then later claim[ing] that his will to testify was overcome." <u>Id</u>. (internal quotation omitted).
>
> ...
>
> ... In postconviction proceedings, the state district court found that Frey waived his right to testify and exercised his right not to testify after being advised of his right to testify by counsel. ... This finding was affirmed by the Supreme Court of North Dakota on appeal. <u>See</u> <u>Frey,</u> 509 N.W.2d at 265 ("Trial counsel elected to advise Frey not to take the stand. Frey accepted the advice."). While "waiver" is a mixed question of law and fact, <u>see</u> <u>United States v. Caldwell,</u> 954 F.2d 496, 504 (8th Cir.), <u>cert. denied,</u> 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992), these factual findings of advice and acceptance are clearly supported by the record, and we will not second guess them. <u>See</u> <u>Pryor,</u> 103 F.3d at 712-13; 28 U.S.C. § 2254(d).
>
> Considering all of the above, the district court correctly ruled that Frey voluntarily and knowingly waived his constitutional right testify. Frey, after receiving the advice of counsel, chose to exercise his constitutional right not to testify. His postconviction dissatisfaction with this decision does not change our analysis. We hold that Frey voluntarily and knowingly waived his constitutional right to testify on his own behalf, and we reject his claim to the contrary.

Additionally, in response to a claim of ineffective assistance of counsel because counsel did not call a defendant as a witness, the Eighth Circuit has held that a habeas petitioner must establish

that his counsel's performance was deficient and that it prejudiced the defendant in regard to his claim. El-Tabech v. Hopkins, 997 F.2d 386, 389 (8th Cir. 1993).

Upon considering the issues of Ground 3 the Missouri appellate court considered that the right to testify is a fundamental right and that it must be voluntarily and knowingly made; that advice not to testify and to call witnesses may be considered sound trial strategy; that Petitioner contended that if he had testified he would have testified that he was home during the robbery; that his wife had testified she would have said that he was home between 7:30 and 8:00 p.m.; that the robbery occurred around 8:00 p.m.; that Petitioner's wife's testimony would not have contradicted the evidence; that because counsel filed a motion in limine regarding incriminating statements of Petitioner's wife, had Petitioner's wife testified, evidence damaging to Petitioner might have been introduced; that the evidence against Petitioner was overwhelming; and that, therefore, Petitioner failed to establish that counsel's performance was unreasonable or prejudicial in regard to counsel's advice that Petitioner not testify and in regard to his counsel's failure to call Petitioner's wife as a witness. This reasoning of the State appellate court is not contrary to federal law and is a reasonable application of federal law. See Strickland, 466 U.S. at 687; Hanes, 240 F.3d at 698; Frey, 151 F.3d at 897-98; El-Tabech, 997 F.2d at 390. The court finds, therefore, that Petitioner's Ground 3 is without merit and that it should be dismissed.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner has procedurally defaulted Grounds 2 and 4-8 of his § 2254 Petition. The court further finds that Petitioner's Grounds 1 and 3 are without merit. As such, Petitioner's § 2254 petition for habeas relief should be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a

constitutional right, Petitioner should not be granted a certificate of appealability in this matter. <u>See</u> <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Motion for Leave to Order Immediate Habeas Relief be **DENIED**; [8]

**IT IS FURTHER RECOMMENDED** that Petitioner's pleading in which he asks this court to rule in his favor in regard to all stated grounds for relief be **DENIED**; [9]

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion to Strike Respondent's Response to Order to Show Cause be **DENIED**; [10]

**IT IS FURTHER RECOMMENDED** that the Petitioner's Motion requesting release as soon as Respondent can process the court's order be **DENIED**; [11]

**IT IS FURTHER ORDERED** that the relief sought in the document titled "Declare Judgment by for reasons of default" be **DENIED**; [12]

**IT IS FURTHER RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED**; [1]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of November, 2005.